NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
CAPITAL INVESTMENT FUNDING,         :
LLC,                                :
                                    :    CIVIL ACTION NO. 08-4714 (JLL)
             Plaintiff,             :
    v.                              :
                                    :
LANCASTER RESOURCES, INC.,          :    OPINION
et al.,                             :
                                    :
             Defendants.            :
_____ :

**LINARES**, District Judge.

Pending before this Court are multiple motions to dismiss – all pursuant to Federal Rule of Federal Rules of Civil Procedure 12(b)(6) and 9(b) – brought by Defendants Martin Ender ("Ender") (Docket Entry # 219), James Caserta ("Caserta") (Docket Entry # 57), and Stuart Katz ("Katz") (Docket Entry # 108). For the reasons set forth below, Katz's and Caserta's motions are granted and Ender's motion is granted in part and denied in part.

**I.      Facts**

Plaintiff's Amended Complaint sets forth the following set of facts. In April 1999, Plaintiff Capital Investment Funding ("CIF") was created as a subsidiary of Defendant Lancaster Resources, Inc. ("LRI"). (Am. Compl. ¶ 48.) LRI owned a 91% interest in CIF. (Id. ¶ 50.) CIF raised money in South Carolina by issuing a prospectus and selling Notes under the Securities Act of South Carolina. (Id. ¶ 51.) LRI took the money raised by CIF and lent it out to third-party borrowers, securing each loan with a security interest appropriate to the situation of the loan. (Id.

1

¶ 52.)

On May 1, 1999, LRI executed and delivered a promissory note to CIF, through which it borrowed $3 million and agreed to give CIF collateral for the loan in the form shareholder interest in LRI and assignment of all security interests acquired by LRI as part of its re-lending efforts.  (Id. ¶ 53.)  The amount of the loan increased over time, with LRI regularly substituting collateral, making interesting payments, and taking security interests in properties acquired by entities receiving LRI loans.  (Id. ¶ 54.)

On June 5, 2002, Defendant Martin Ender ("Ender"), President of LRI, increased the loan to $21 million and agreed to repay it by June 2005.  (Id. ¶ 56.)  LRI again gave CIF full security interest in collateral and represented that it would not encumber the collateral in any way without the written consent of CIF.  (Id. ¶¶ 56-58.)  LRI promised to record all security interests, provide CIF with updated lists of substituted collateral, and provide UCC liens to CIF.  (Id. ¶ 60.)

In November 2002, LRI sold its entire interest in CIF to Arthur Field, a resident of South Carolina.  (Id. ¶ 62.)  Thus, Field became the manager of CIF.  Then, in December 2003, LRI and CIF amended the 2002 agreement to change the interest rate and extend the repayment schedule to December 31, 2006.  (Id. ¶ 64.)  CIF and LRI executed an amendment to the revolving loan agreements in place.  Additionally, the amendment obligated LRI to submit proof to CIF, by February 15 of each year, of sufficient collateral equal to the value of the credit outstanding.  (Id.)

Defendant LG is the parent company of LRI and it holds a controlling interest in many of the defendants named in this case.  (Id. ¶¶ 66-67.)  Those defendants (LG subsidiaries), along with LG itself, borrowed substantial sums from LRI (that LRI originally borrowed from CIF). (Id. ¶ 67.)  LRI represented to CIF that, in accordance with the 2003 agreement, the sums

2

advanced to LG were secured by adequate collateral. (Id. ¶ 68-69.)

Defendant Robert L'Abbate ("Abbate") was an officer of LRI and managing member of LG. (Id. ¶ 70.) He specifically made representations to CIF that all sums extended by CIF to LRI were properly collateralized. (Id.) LRI made timely principal and interest payments on the $21 million loan from 2003 to 2006. (Id. ¶ 71.) However, LRI failed to pay off the principal by the December 31, 2006 maturity date and therefore the parties agreed to extend the repayment date through 2010. (Id. ¶ 72.) Subsequently, LRI failed to provide a regular substitution of collateral list for 2007, failed to make the agreed-upon principal repayments in 2007, and failed to make timely interest payments in 2008. (Id. ¶¶ 73-75.)

CIF believes that LRI borrowed more money, or caused its subsidiaries to borrow money, from other lenders without informing CIF and that these new lenders received security interests on properties in which CIF was already supposed to have had a superior security interest. (Id. ¶ 77.) LRI never asked CIF's permission to borrow from additional lenders and/or to give CIF's collateral to those other lenders. (Id.)

In August 2007, Field (CIF's manager) came to meet with Defedant L'Abbate (of LRI) to inspect collateral. (Id. ¶ 79.) L'Abbate provided Field with a list of all properties and showed Field proof of the liens on the properties and appraisals of the properties. (Id.) CIF listed those properties in its annual report to current note-holders. (Id.) In January 2008, L'Abbate attended a membership meeting of CIF in South Carolina and made a presentation again representing that CIF's loan to LRI was amply collateralized. (Id. ¶ 80.) CIF alleges that L'Abbate committed fraud by lying about the collateral at both of these meetings.

3

As of December 31, 2007, CIF alleges that LRI and its related entities owe CIF $18 million plus interest at the rate of 10.85%. (Id. ¶ 82.) CIF believes that LRI has defaulted on, and will continue to default on, obligations related to properties in which CIF has a collateral interest. (Id. ¶ 84.) Thus, CIF is worried that its collateral interest in those properties has been and will continue to be severely jeopardized. (Id. ¶ 89 .)

Upon these facts, Plaintiff alleges the following Counts: (1) Breach of contract; (2) Common law fraud; (3) Equitable Fraud; (4) Fraudulent Inducement; (5) Intentional Misrepresentation; (6) Negligent Misrepresentation; (7) Unjust enrichment; (8) Negligently causing economic harm; (9) Conversion of Funds; (10) Breach of fiduciary duty (against L'Abbate, Ender, Katz, and Caserta); and (11) Piercing the Corporate Veil (holding L'Abbate, Ender, Katz, and Caserta individually liable).

On January 28, 2009, Defendant L'Abbate filed for Chapter 11 bankruptcy on behalf of himself and several of the entities named as Defendants in the present matter. This Court subsequently stayed this case as to all Entity Defendants[1] and as to Defendant L'Abbate pursuant to 11 U.S.C. § 362(a). (Docket Entry # 232.) However, the motions to dismiss by the individual defendants – Caserta, Katz, and Ender – are ripe for disposition and are not encompassed within the §362(a) stay. Each Defendant moves to dismiss Counts I, II, III, IV, V, VI, IX, and XI, 2, 3, 4, 5, 6, 10, and 11 for failure to state a claim or for failure to plead with specificity. Additionally, Ender moves to dismiss Counts VII, VIII, and IX.

---

[1] The Court uses the term Entity Defendants to refer to the entities named in Paragraphs 2-38 of Plaintiff's Amended Complaint.

**II.     Standard**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[2] See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).  However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "Only a claim that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

Finally, Federal Rule of Procedure 9(b) imposes a heightened pleading requirement with

---

[2] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

5

respect to allegations of fraud, over and above that required by Rule 8(a). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id.

### III.     Analysis[3]

####      A.     Rule 9(b)

Caserta, Katz, and Ender each move to dismiss all counts sounding in fraud because of Plaintiff's failure to plead with specificity pursuant to Fed. R. Civ. P. 9(b). The allegations regarding Caserta, Katz, and Ender are indeed sparse. Each is simply alleged to have been a principal and/or officer of the Entity Defendants. (Am. Compl. ¶¶ 42-44.) However, Plaintiff fails to link any of the individual defendants with a misrepresentation or fraudulent omission.

Count II alleges common law fraud. It alleges that all Defendants "jointly, severally and/or each independently, committed common law fraud against Plaintiff CIF, including making false, fraudulent and material misrepresentations and omissions and/or deliberately deceiving CIF..." (Am. Compl. ¶ 105.) Additionally, it alleges that CIF relied upon "false, fraudulent and

---

[3] Plaintiff attaches documents to its opposition to Caserta and Katz's motion to dismiss. "[U]nless a court converts a Rule 12(b)(6) motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court cannot consider material outside the pleadings (i.e. facts presented in briefs, affidavits or exhibits)." Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 475 n.21 (D.N.J. 1998). Here, the Court finds it appropriate to exclude the extrinsic documents referenced in Plaintiff's opposition and treat the present motion as one arising under Fed. R. Civ. P. 12(b)(6).

material misrepresentations" and accordingly sustained "substantial damages." (Id. ¶¶ 106-07.) Similarly, Count III alleges equitable fraud but mimics the exact language set forth in Count II. Neither Count, however, mentions Caserta, Katz, or Ender as the source of any misrepresentation. Rather, each alleges general misrepresentations and attempts to link those alleged falsities to the individual defendants by virtue of their alleged position as principal/officer of the Entity Defendants. The same holds true for Counts IV, V, and VI.

Count IV alleges that Defendants "intended to and did in fact fraudulently induce Plaintiff, CIF, into entering into the aforesaid contracts with LRI." (Id. ¶ 113.) Plaintiff does not, however, outline the specific nature of the fraudulent inducements, when those inducements were made, and how each inducement is linked to Caserta, Katz, or Ender. Similarly, Count V alleges that Defendants "made intentional misrepresentations or omissions of material facts to Plaintiff, CIF, in connection with the aforesaid contracts with LRI, including, but not limited to Defendant LRI's representation that it would secure Plaintiff CIF's interests." (Id. ¶ 116.) Though Plaintiff alludes to at least one misrepresentation in Count V, that statement is linked only to Defendant L'Abbate and not Caserta, Katz, or Ender. Finally, Count VI alleges the "negligent misrepresentations or omissions of material facts to Plaintiff..." (Id. ¶ 121.) Again, Plaintiff does not include representations or omissions made by Caserta, Katz, or Ender.

Having analyzed each of the above-referenced counts, the Court concludes that they fail to satisfy Rule 9(b). Without referencing a statement, misrepresentation, or omission made by Caserta, Katz, or Ender, Plaintiff fails to inject any degree of "precision" or "substantiation" into the allegations of fraud. Plaintiff implicitly acknowledges its failure to plead with specificity, arguing instead that "it is not in a position to document every single transgression of each and

every Defendant" because "most of this critical knowledge is peculiarly within the knowledge of the Defendants." (Docket Entry # 120 ("Opp. Br.") 10.)

Indeed, courts have relaxed the particularity requirement of Rule 9(b) "where the factual information is peculiarly within the defendant's knowledge or control." In re Burlington Coat Factory Securities Litig., 114 F.3d 1410, 1418 (3d Cir. 1997). This is because strict application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983). The Third Circuit has held in particular that "in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs." Craftmatic Securities Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989). However, "even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within the defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based." Id. at 645.

Here, Plaintiff's bare allegations not only fail to survive 9(b) analysis but also fail to provide the background necessary to substantiate the claim that the requisite information is peculiarly within Defendants' control. The motions to dismiss Counts II, III, IV, V, and VI against Caserta, Katz, and Ender are accordingly granted. Each Count is dismissed without prejudice.

**B.    Counts I, X, and XI**

Caserta, Katz, and Ender also move to dismiss Count I, X, and XI – breach of contract, breach of fiduciary duty, and piercing the corporate veil, respectively – for failure to state a claim. In Count I, Plaintiff alleges that all Defendants "failed to abide by the provision set forth

in the revolving credit loan agreement" and therefore "breached the terms of their written or verbal contracts with Plaintiff CIF." (Am. Compl. ¶¶ 96-103.) Each defendant argues for dismissal of this ground on the idea that a non-party to a contract cannot be liable for breach of a contractual duty. FDIC Deposit Ins. Corp. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994). Indeed, Plaintiff does not allege that Caserta, Katz, or Ender were parties to the contracts in question.

Rather, Plaintiff premises recovery on the "piercing the corporate veil" or alter-ego theory alleged in Count XI. Piercing the corporate veil, in this case, is subject to the heightened pleading standard of Rule 9(b) because it is grounded in allegations of fraud. Bd. of Trustees Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 173 n. 10 (3d Cir. 2002) (citation omitted). As indicated earlier, Plaintiff has failed throughout its Amended Complaint to plead with the specificity demanded by Rule 9(b). The allegations with respect to Counts I and XI are no different. Plaintiff does not allege how Caserta, Katz, or Ender exercised dominion or control over LRI or how any of them abused the corporate form to perpetrate fraud or injustice. State, Dep't of Environ. Protection v. Ventron Corp., 94 N.J. 473, 500-01, 468 A.2d 150, 164 (N.J. 1983). Count XI, therefore, fails to survive 9(b) scrutiny. And because Plaintiff relies on Count XI to substantiate the breach of contract allegation in Count I, the Court must accordingly grant the motions to dismiss Count I as well.

Next, Count X alleges that Defendants L'Abbate, Ender, Katz, and Caserta acted in a fiduciary capacity for CIF and breached their fiduciary duties by failing to abide by the provisions set forth in the revolving loan agreement. (Id. ¶¶ 136-138.) New Jersey courts have been reluctant to ascribe a fiduciary duty to the creditor-debtor relationship. See, e.g., United Jersey Bank v. Kensey, 306 N.J. Super. 540, 552, 704 A.2d 38, 44 (App. Div. 1997) ("The virtually

9

unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty."). Plaintiff, however, argues that this involves the rare case where the director of a corporation owes a fiduciary duty to a creditor once the corporation becomes insolvent. "Directors normally owe no duty to corporate creditors, but when the corporation becomes insolvent the creditors' investment is at risk, and the directors should manage the corporation in their interests as well as the shareholders." Portage Insulated Pipe Co. v. Costanzo, 114 N.J. Super. 164, 166, 275 A.2d 452 (App. Div. 1971); see also Francis v. United Jersey Bank, 87 N.J. 15, 36, 432 A.2d 814 (1981); In re Allserve Systems Corp., 379 B.R. 69, 78-79 (Bkrtcy. D.N.J. 2007).

Though Plaintiff raises a colorable legal argument, the Amended Complaint fails to allege LRI's insolvency. Without alleging insolvency and without alleging particular facts giving rise to a fiduciary duty, the motion to dismiss this Count will be granted. Plaintiff shall have 30 days from the date of this Opinion to amend its complaint and satisfactorily allege facts sufficient to set forth the claims articulated in Counts I, X, and XI.

### C. Counts VII, VIII, and IX

Only Ender moves to dismiss Counts VII, VIII, and IX – for unjust enrichment, negligently causing economic harm, and conversion of funds, respectively. Ender generally mimics the rest of his arguments with respect to dismissal of these counts, alleging both a lack of factual basis for these Counts as well as the idea that he never entered into a contractual relationship with Plaintiff. (Ender Br. 31.) These Counts are not, however, subject to the heightened pleading standard of Rule 9(b). Moreover, Ender does not specify how exactly Plaintiff's Amended Complaint fails to state a claim. Rather, he simply asserts that the claims lack factual basis. In the absence of further legal and factual argument by Ender, the Court

denies his motion to dismiss Counts VII, VIII, and IX.  Each properly alleges that Ender, as a principal and/or officer of the Entity Defendants, unjustly retained a benefit conferred by Plaintiff, negligently caused harm to Plaintiff, or negligently deprived Plaintiff of its right to a collateral interest in properties secured by CIF monies.  With respect to these counts, therefore Ender's motion is denied.

### III.  Conclusion

For the reasons set forth above, the motions to dismiss Counts I, II, III, IV, V, VI, X and XI as to Defendants Caserta, Katz, and Ender are granted.  However, Ender's motion to dismiss Counts VII, VIII, and IX is denied.  Plaintiff shall have 30 days from the date of entry of this Opinion and accompanying Order to submit an Amended Complaint that cures the deficiencies outlined above.

An appropriate Order accompanies this Opinion.

Dated: June 17, 2009                                          /s/ Jose L. Linares
                                                              United States District Judge

11