NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

——————————————————————————

CAPITAL INVESTMENT FUNDING, LLC,

      Plaintiff,

v.

LANCASTER RESOURCES, INC., et al.

      Defendants.

-------------------------------------------------

**Civil Action No. 08-4714 (JLL) (JAD)**

**OPINION ON PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

### JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon Plaintiff Capital Investment Funding, LLC's Motion for Leave to File a Third Amended Complaint. (ECF No. 346). Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on this issue. After having considered the parties' submissions, and for the reasons stated below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.  RELEVANT BACKGROUND AND PROCEDURAL HISTORY

In this case, Plaintiff alleges that Defendants engaged in a "corporate shell game" aimed at defrauding and otherwise harming Plaintiff with regard to a series of loan transactions. (Pl. Br., ECF No. 346-1, at 8). Plaintiff claims that the individual defendants did so by creating and utilizing an extensive network of entities under their ownership and/or control. (See generally, Proposed Third Amended Complaint ("TAC"), ECF No. 346-16).

Plaintiff originally commenced this matter by filing a Complaint on or about September 22, 2008. (ECF No. 1). Plaintiff filed an Amended Complaint on October 10, 2008, (ECF No. 3),

and various defendants filed motions to dismiss that pleading.  (See ECF Nos. 57, 108, 176, 185, 219).  Plaintiff also filed a motion to appoint a receiver on December 12, 2008.  (ECF No. 118).  On January 28, 2009, Defendant Robert L'Abbate filed for Chapter 11 bankruptcy, on behalf of both himself and certain "affiliated" defendant entities.  (See March 18, 2009 Letter Order, ECF No. 318).  In light of Defendant L'Abbate's bankruptcy proceedings, the Hon. Jose L. Linares, U.S.D.J., stayed this matter, with the exception of the already-filed motions to dismiss (other than Defendant L'Abbate's, which was clearly within the scope of the mandatory bankruptcy stay).  (Id.).  By Order dated June 17, 2009, Judge Linares resolved those pending motions, dismissing certain of Plaintiff's claims without prejudice and affording Plaintiff an opportunity to file an amended pleading.  (ECF No. 236).  Prior to any such amendment, however, Judge Linares stayed this matter, in its entirety, by Order dated August 12, 2009.  (ECF No. 241).  In that Order, Judge Linares also specified that Plaintiff would be permitted to file an amended pleading upon the conclusion of Mr. L'Abbate's bankruptcy proceeding.  (Id.).  Judge Linares administratively terminated this matter by Order dated November 10, 2011.  (ECF No. 242).

By Order dated April 23, 2014, Judge Linares reinstated this case to the active docket, and afforded Plaintiff thirty (30) days in which to file "a Second Amended Complaint as contemplated by [His Honor's] Orders of 6/17/09 and 8/12/09."  (ECF No. 284).  On May 23, 2014, Plaintiff filed a Second Amended Complaint.  (ECF No. 290).  Counsel for Defendants James Caserta and Wiltshire Properties, LLC filed motions to withdraw from the case, (ECF Nos. 283, 292), and the Court repeatedly extended Defendants' time to respond to the Second Amended Complaint while those motions were pending (the Court ultimately granted both motions for leave to withdraw (ECF Nos. 312 and 314)).  By Order dated July 17, 2014, this Court permitted Plaintiff to file a motion seeking leave to file yet another amended pleading.  (ECF No. 311).  On August 29, 2014,

2

Plaintiff filed a motion requesting leave to file a proposed Third Amended Complaint.  (ECF No. 318).  On October 6, 2014, Defendant Ridgefield Park Office Complex, LLC filed a cross-motion to dismiss Plaintiff's Second Amended Complaint.  (ECF No. 325).

The Court scheduled an in-person conference to address the status of the case (i.e., several Defendants had not yet responded to Plaintiff's Second Amended Complaint, as the Court had stayed their deadlines to do so pending resolution of the aforementioned motions to withdraw). Following that conference, the Court entered an Order setting forth a briefing schedule on Plaintiff's Motion for Leave to File a Third Amended Complaint as well as any appropriate cross-motions.  (ECF No. 339).  Pursuant to that Order, Plaintiff re-filed its Motion for Leave to Amend, (ECF No. 346), and multiple defendants filed cross-motions to dismiss Plaintiff's Second Amended Complaint.  (ECF Nos. 347, 348 and 349).  On December 10, 2014, the Court entered an Order stating:  "After having reviewed the motion papers, the Motions to Dismiss are hereby severed and will be decided by the Court after the Motion to Amend, (ECF No. 346), is decided." (ECF No. 352).  As such, only Plaintiff's Motion for Leave to Amend is currently before this Court.

In its Motion, Plaintiff seeks the Court's leave to amend its pleading to make the following changes:

> To specifically identify the fact that Lancaster Resources, Inc., n/k/a LRI II, LLC, and several of its affiliated entities are insolvent, to eliminate the Bankruptcy Debtors as Defendants, and to revise the case caption accordingly.
>
> To implead Defendant David LORENZO [sic], an individual , as a party who was previously identified as a fictitious "John Doe" Defendant.
>
> To add claims for violations of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, et seq.

> To add claims for Collection of Book Accounts as against certain Defendants.
>
> To remove Defendants New Resources, LLC, New Devlopers, LLC and New Group, LLC based upon [Plaintiff's] ongoing investigation and the determination that such entities were never formed despite expressed intentions of certain Defendants to form those entities, as they were ultimately formed under different names.

(Pl. Br., ECF No. 346-1, at 3-4).  Defendants have opposed some, but not all, of Plaintiff's proposed amendments.  Specifically, Defendants argue that Plaintiff's new causes of action under the Racketeer Influenced Corrupt Organizations Act ("RICO") and for "Collection of a Book Account", as well as all claims against Proposed Defendant David Lorenzo, would not survive a motion to dismiss and, therefore, any proposed amendment including such claims would be futile. (Def. Br., ECF No 348, at 19-28; Def. Br., ECF No. 349, at 28-33).  Defendants do not offer any argument with regard to Plaintiff's other proposed amendments.  (Id.).

## II.   **LEGAL DISCUSSION**

### a.   **General Standards Applicable on a Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Wright & Miller section 1484, at 676 ("Subdivision (a)(2) encourages the court to look favorably on requests to amend.").  This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also Sabatino v. Union Township, No. , 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits.").

4

The decision to grant or deny leave to amend under Rule 15(a) is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. Grayson v. Mayview State Hosp., 292 F. 3d 103, 108 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Here, various defendants challenge certain of Plaintiff's proposed amendments on "futility" grounds.[1] A proposed amendment "'is futile if the amended complaint would not survive a motion to dismiss.'" County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014). "To survive a motion to dismiss, a complaint

---

[1] Defendants do not argue that Plaintiff's proposed Third Amended Complaint is the product of any undue delay or bad faith motive, or that the pleading would cause them any legitimate prejudice. Moreover, as noted above, Defendants challenge only the proposed amendments that would add new claims, as well as the addition of David Lorenzo as a named defendant. (Def. Br., ECF No. 348 at 19-29; Def. Br., ECF No. 349, at 28-33). Defendants do not oppose the proposed amendments that would remove certain named defendants from the case. (Id.).

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (U.S. 2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id.

The Court notes that Defendants bear the burden of establishing that Plaintiff's proposed amendments are futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one.   Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10.   "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'"   Schiano v. MBNA, 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *45 (D.N.J. Feb. 11, 2013) (internal citations omitted).   Against this backdrop, the Court will consider Defendants' challenges to each of Plaintiff's proposed amendments in turn.

### b.   Plaintiff's Proposed RICO Claims

Plaintiff requests leave to add five causes of action related to the federal RICO statute, 18 U.S.C. § 1961, et seq.   Specifically, Plaintiff seeks to bring claims for violations of 18 U.S.C. 1962 § (a), (b), (c) and (d), as well as a separate cause of action for "aiding and abetting" such violations. (TAC ¶¶ 409-454).   In simplified terms, subparagraph (a) of 18 U.S.C. § 1962 prohibits any "person"[2] from using income derived from a "pattern of racketeering activity" or collection of an unlawful debt to establish, operate or acquire any interest in an "enterprise" engaged in other otherwise impacting interstate commerce.   Subparagraph (b) prohibits any "person" from acquiring or maintaining an interest in or control of such an "enterprise" through a "pattern of

---

[2] Terms in quotation marks are expressly defined in the RICO statute.

racketeering activity" or collection of an unlawful debt.  Subparagraph (c) prohibits any "person" employed by or associated with such an "enterprise" from conducting that enterprise's affairs through a "pattern of racketeering activity" or collection of an unlawful debt.  Subparagraph (d) makes it unlawful for any "person" to conspire to violate subparagraphs (a) (through (c).

While each subparagraph targets different conduct, each is focused on conduct that amounts to either "a "pattern of racketeering activity" or the collection of an unlawful debt. Plaintiff alleges only the former, (see TAC ¶¶ 409-454), and so this Court will limit its analysis accordingly.   "A pattern of racketeering activity requires at least two predicate acts of racketeering." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) (citing 18 U.S.C. § 1961(5)). The RICO statute contains an express list of the predicate acts that may serve as the basis for a "pattern of racketeering activity."  18 U.S.C. § 1961(1).

Here, Plaintiff alleges the same list of predicate acts for each of its RICO claims. Specifically, Plaintiff contends that Defendants engaged in:

> (a) Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;
>
> (b) Multiple instances of wire fraud in violation of 18 U.S.C. § 1343;
>
> (c) Multiple instances of transportation of stolen goods, including money obtained by fraud, in violation of 18 U.S.C. § 2314;
>
> (d) Multiple instances of Laundering of monetary instruments, in violation of 18 U.S.C. § 1956; and
>
> (e) Multiple instances of Engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957.

(TAC §§ 415, 424, 433, 442 and 450).  Each of those alleged categories of acts would qualify as "racketeering activity" under 18 U.S.C. § 1961(1).  Plaintiff also alleges that Defendants took part

in "numerous predicate acts that are currently unknown to [Plaintiff] and only fully known to [the Defendants]." (Id.).

In challenging Plaintiff's proposed RICO claims, Defendants argue that Plaintiff has failed to plead the underlying predicate acts with the requisite degree of factual detail. Specifically, Defendants contend that Plaintiff failed to plead its fraud-based predicate acts (i.e., mail fraud, wire fraud, transportation of stolen goods obtained via fraud) in compliance with Federal Rule of Civil Procedure 9(b). (Def. Br., ECF No. 348 at 21-23; Def. Br., ECF No. 349, at 30-32). Defendants similarly argue that Plaintiff failed to plead its non-fraud-based predicate acts with even the more lenient level of detail required under Rule 8(a). (Def. Br., ECF No. 348 at 23-25; Def. Br., ECF No. 349, at 32-33). The Court will address each argument in turn.[3]

### 1.      **Fraud Based Predicate Acts**

Defendants argue that, to the extent Plaintiff's RICO claims are premised on fraud-based "predicate acts", Plaintiff has failed to plead those acts with the degree of specificity required under Rule 9(b). Indeed, the United States Court of Appeals for the Third Circuit has acknowledged that where, as here, a plaintiff alleges mail and wire fraud as the predicate acts underlying a RICO claim, that plaintiff must "'state with particularity the circumstances constituting fraud' . . . This

---

[3] In addition to their arguments regarding the factual sufficiency of Plaintiff's RICO allegations, Defendants Martin Ender, James Caserta, as well as Proposed Defendant David Lorenzo, contend that Plaintiff lacks standing to pursue its RICO claims. (Def. Br., ECF No. 348, at 25-27). Defendants' acknowledge that this argument would require the Court to question the veracity of certain of Plaintiff's proposed factual allegations, which Defendants characterize as incompatible with statements Plaintiff made during another litigation. (Id. at 26). In the context of Plaintiff's motion to amend, however, the Court must both accept Plaintiff's factual allegations as true and also view all such facts in the light most favorable to Plaintiff. (See, e.g., Rowen Petroleum Props., LLC v. Hollywood Tanning Sys., No. 08-4764 (NLH), 2010 U.S. Dist. LEXIS 22782, *15-16 (D.N.J. Mar. 12, 2010)). Defendant's standing argument disregards that fundamental principle and is not appropriate at this juncture in the case.

8

requires a plaintiff to plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." Grant v. Turner, 505 F. App'x 107, *111 (3d Cir. 2012) (internal citations omitted). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Lum, 361 F.3d at 223. To the extent a plaintiff fails to pled fraud-based acts with the requisite level of specificity, the Court will not consider them as "predicate acts" capable of supporting a RICO claim. See Dist. 1199P Health & Plan v. Janssen, L.P., No. 06-3044 (FLW), 2008 U.S. Dist. LEXIS 103526, *42 (D.N.J. Dec. 23, 2008) ("[T]his Court will only consider as predicate racketeering acts those mail and wire frauds alleged with the specificity required by the heightened pleading standard of Rule 9(b).")

Plaintiff contends that its fraud allegations are sufficient at the pleading stage, arguing that, because Plaintiff "lacks access to all facts necessary to detail its claim", the Court must subject its allegations to a "relaxed" pleading standard. (Pl. Rep. Br., ECF No. 350, at 22). Plaintiff cites exclusively to the Supreme Court's decision in Rotella v. Wood, 528 U.S. 549 (2000) in support of that argument. In Rotella, the Supreme Court observed, in dicta (the issue before the Court concerned the relevant limitations period), that the requirements of Rule 9(b) would not prevent a plaintiff from sufficiently alleging fraud-based predicate acts within the limitations period, as Federal Rule of Civil Procedure 11(b)(3) "allow[s] pleadings based on evidence reasonably anticipated after further investigation or discovery." (Id. at 560). In support of that statement, the Rotella Court cited to the United States District Court for the Seventh Circuit's opinion in Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1051 (7th Cir. 1998). In Corley, the court noted that the pleading requirements of Rule 9(b) "must be relaxed if, at the time the complaint was filed, [the plaintiff] had been denied access in discovery to information that would identify [persons

involved in the illicit activity].  Predicate acts of racketeering activity relating to those [persons] may be pled more generally."

The parties have not directed the Court to any Third Circuit precedent directly addressing the "relaxation" of Rule 9(b)'s requirements in the context of a RICO claim, and the Court has not located any through its independent research.  The Court of Appeals has, however, addressed the application of Rule 9(b) in non-RICO situations involving corporate fraud, and has found that a plaintiff may plead its fraud claims more generally in certain narrow circumstances.  See C.W. Sommer & Co. v. Rockefeller (In re Rockefeller Ctr. Props. Sec. Litig.), 311 F.3d 198, 216 (3d Cir. 2002) ("Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."); accord Shapiro v. UJB Fin. Corp., 964 F.2d 272, 285 (3d Cir. 1992) ("'Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the [particularity requirements of Rule 9(b)] when factual information is peculiarly within the defendant's knowledge or control.'") (quoting Craftmatic Sec. Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989)).  A litigant may not, however, remain idle and still expect to use "relaxed" pleading requirements to shield its fraud claims from the stringent requirements of Rule 9(b).  Rather, plaintiffs must allege that, despite their best efforts, the specific information necessary to satisfy Rule 9(b) is truly beyond their reach.  See, e.g., Shapiro, 964 F.2d at 285 ("[E]ven under a more relaxed application of [Rule 9(b)], plaintiffs must accompany [an allegation that the requisite information is in a defendant's exclusive control] with a statement of facts upon which their allegation is based.  To avoid dismissal in these circumstances, a complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity.") (internal

10

citations omitted); Dist. 1199P Health & Plan, 2008 U.S. Dist. LEXIS 103526 at *44-45 (same);

Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 314 (D.N.J. 2005) ("Even under a more

lenient application of Rule 9, a plaintiff 'must accompany such an allegation with a statement of

the facts upon which their allegation is based' and, although information and belief pleading is

permissible, the complaint should set forth 'the nature and scope of plaintiffs' efforts to obtain,

before filing the complaint, the information needed to plead with particularity.'") (internal citation

omitted).  Moreover, the circumstances under which a court may relax Rule 9(b)'s requirements

are quite limited.  Courts will not, for example, permit generalized pleading where the information

necessary to plead fraud claims with specificity may be obtained from a third-party (i.e., that

information is not in a defendant's exclusive control), see In re Tellium , Inc. Sec. Litig., No. 02-

cv-5878 (FLW), 2005 U.S. Dist. LEXIS 19467, *38-40 (D.N.J. June 30, 2005), or where the fraud

in question is allegedly "massive" or complicated in nature and therefore not easily pled with the

requisite level of detail.  See Gov't Emples. Ins. Co. v. MLS Med. Group LLC, No. 12-7281 (SRC),

2013 U.S. Dist. LEXIS 171983, *33 (D.N.J. Dec. 6, 2013).  In light of these standards, the Court

will now consider Plaintiff's allegations regarding the fraud-based "predicate acts" at issue.

### A.    Mail and Wire Fraud

As the elements of mail and wire fraud are essentially identical (the only significant

difference being the medium at issue), the Court will address these categories of alleged predicate

acts together.  "Mail or wire fraud consists of (1) a scheme to defraud, (2) use of the mail or

interstate wires to further that scheme, and (3) fraudulent intent."  Bonavitacola Elec. Contr., Inc.

v. Boro Developers, Inc., 87 F. App'x 227, 231 (3d Cir. 2003) (citing United States v. Pharis, 298

F.3d 228, 233 (3d Cir. 2002)).  "When mail or wire fraud is the predicate act to a RICO violation,

the plaintiff must allege that mailings are related to the underlying fraudulent scheme, even though

11

mailings need not be an essential element of the scheme and need not themselves contain any misrepresentations." Id. (citing Tabas v. Tabas, 47 F.3d 1280, 1294 & n. 18 (3d Cir. 1995)).

Plaintiff argues that it has presented sufficient allegations of mail and wire fraud, and cites a number of specific examples of such allegations. (Pl. Rep. Br., ECF No. 350, at 23). The Court will evaluate each category of mail/wire fraud that Plaintiff has identified.

First, Plaintiff contends that Defendant Lancaster Resources, Inc. ("LRI") and/or its principals, including Defendants Ender, Katz, Caserta and Lorenzo, made certain false representations to Plaintiff regarding the status of collateral allegedly used to secure transactions between LRI and Plaintiff. (Id. at 23) (citing TAC ¶¶ 84-89, 90-92, 102-104). Plaintiff does not provide any details regarding the content of those alleged misrepresentations. Moreover, as Defendants allegedly made those misrepresentations to Plaintiff itself, Plaintiff cannot legitimately contend that the details necessary to comply with Rule 9(b) are uniquely in Defendants' possession. Put another way, if, as Plaintiff alleges, various Defendants made promises and representations to Plaintiff regarding LRI's collateral, Plaintiff must necessarily know who made the promises/representations, as well as the time, date and general contents of those statements. Plaintiff is therefore obligated to comply with the heightened pleading standard set forth in Rule 9(b), and it has failed to do so. Indeed, Plaintiff has not even alleged the most basic aspect of its claims – i.e., which communications were made by wire and which were made by mail – with specificity.

Next, Plaintiff contends that various Defendants engaged in a scheme under which they developed "sham" entities to serve as "intermediary lenders." (Id.) (citing TAC ¶¶ 217-53). Specifically, Plaintiff alleges that it unwittingly loaned money to an intermediary that Defendants created and that intermediary would, in turn, loan sums to LRI. LRI would then use the proceeds

of that loan to make interest payments to Plaintiff, perpetuating an appearance that LRI remained solvent.  Plaintiff does not, however, make any allegations suggesting how Defendants used the mail or interstate wires in connection with that scheme, let alone provide the sort of detail required under Rule 9(b).

Third, Plaintiff alleges that Defendants were involved in a scheme under which Defendants allegedly "sold" various pieces of property to Plaintiff, but never actually transferred any rights to those properties to Plaintiff.  Id. (citing TAC ¶¶ 229-253).  It appears that Plaintiff alleges that Defendants used these transactions as part of an overarching scheme to falsely portray LRI as being solvent.  (TAC ¶¶ 229-253).  Aside from allegations that Plaintiff transferred certain money via wire, (id. at ¶¶ 242-43), Plaintiff does not provide any guidance as to how the mail or interstate wires to were involved in this process, let alone how Defendants used those means of communication as part of their scheme to defraud Plaintiff.

Fourth, Plaintiff makes vague reference to a "Release of Collateral", (Pl. Rep. Br., ECF No. 350, at 23) (citing TAC ¶¶ 197-201), apparently in connection with an alleged scheme to merge various entities and consolidate the debt those entities owed to Plaintiff, but the portion of the TAC that Plaintiff cites in connection with that point does not contain any information on how Defendants used the mail or interstate wires in connection with that scheme.  Finally, Plaintiff cites to a portion of its TAC concerning an alleged contractual arrangement under which a successor in interest to LRI assumed certain monetary obligations owed to Plaintiff.  (Id.) (citing TAC ¶¶ 208-216).  Plaintiff alleges that certain Defendants "fraudulently concealed" that LRI and various other entities under Defendants' control were insolvent and that the collateral securing Plaintiff's loans to LRI was "severely compromised and in many cases, worthless."  (TAC ¶¶ 213-15).  Again, Plaintiff does not allege how Defendants used the mail or interstate wires as part of that process.

Taken together, the allegations that Plaintiff has hand-picked as providing examples of Defendants' alleged mail and wire fraud suggest that Defendants engaged in a scheme (with various subparts) to mislead Plaintiff regarding the financial wellbeing of certain entities, as well as the status of collateral securing Plaintiff's loans to those entities. Plaintiff has not, however, sufficiently alleged that Defendants utilized the mail or interstate wires to further their scheme(s). Plaintiff's counsel argues, in Plaintiff's reply brief, that each of the examples Plaintiff identified "were accomplished via interstate carrier or wires", (Pl. Rep. Br., ECF No. 350, at 23), but does not cite to any portion of the TAC substantiating that claim. Additionally, in Counts XII through XVI of the Complaint, Plaintiff asserts, in conclusory fashion, that Defendants engaged in "multiple instances" of mail and wire fraud in violation of the federal RICO statute. (TAC ¶¶ 415, 424, 433, 442 and 450). In their opposition brief, Defendants Ender, Caserta and Proposed Defendant Lorenzo identified additional instances in which Plaintiff alleged that Defendants used the mail and/or interstate wires. (Def. Br., ECF No. 348, at 21-22) (citing various paragraphs from the TAC). Plaintiff's allegations concerning those instances do not come close to providing the level of factual detail required under Rule 9(b), and Plaintiff does not allege that the information necessary to provide such detail is in Defendants' exclusive possession (or describe Plaintiff's efforts to obtain such information). Indeed, nearly all of the allegations that Defendant identified concern misrepresentations that Defendants allegedly made directly to Plaintiff. (Id.). Therefore, it would appear that the details of those communications would necessarily be available to Plaintiff. Defendants' other alleged misuse of the mail and/or interstate wires concerns loans that Defendants obtained from third-party lenders. (Id.) (citing TAC ¶¶ 78-85, 118, 236, 241 and 256). Any mail or wire interactions with third-party lenders are, by definition, not in Defendants' exclusive possession.

14

As noted above, to the extent a party seeks a relaxation of the stringent pleading requirements of Rule 9(b), that party must allege that the information necessary to comply with that Rule is simply not available (i.e., because the defendant is in sole possession of that information), as well as the steps the party has taken to obtain the missing information.  See, e.g., Shapiro, 964 F.2d at 285.  As Plaintiff's proposed TAC is devoid of any such information, it must plead its fraud-based claims with the specificity required under Rule 9(b).  Plaintiff has failed to do so with regard to Defendants' alleged violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  In turn, this Court finds that it would be futile to permit Plaintiff to include these fraud-based claims as predicate acts in connection with its RICO claims.  See See Dist. 1199P Health & Plan, 2008 U.S. Dist. LEXIS 103526 at *42 ("[T]his Court will only consider as predicate racketeering acts those mail and wire frauds alleged with the specificity required by the heightened pleading standard of Rule 9(b).").

### B.    Transportation of Money Obtained by Fraud

As the third alleged predicate act supporting its RICO claims, Plaintiff contends that Defendants engaged in the "transportation of stolen goods, including money obtained by fraud, in violation of 18 U.S.C. § 2314."  As the Court was unable to locate references to any other "stolen goods", it appears that Plaintiff's contention pertains to money that Defendants obtained from Plaintiff by fraudulent means.  Plaintiff confirmed this understanding in its Reply submission.  (Pl. Rep. Br., ECF No. 350, at 24) (referring to "Defendants' violations of 18 U.S.C. § 2314 as "interstate transfer of monies taken by fraud").  Such claims necessarily involve fraudulent activity that must be pled with the specificity required under Rule 9(b).  See Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 792, n.7 (3d Cir. 1984) (noting that while the

15

actual fraud underlying such a claim must be pled in compliance with Rule 9(b), the other elements of the alleged violation need not be).

Plaintiff argues that "Defendants violations of 18 U.S.C. § 2314 . . . pervade the entire scheme, which involved frequent, continuing and numerous transfers of loaned funds from CIF in South Carolina to LRI in New Jersey.  These are detailed throughout the TAC."  (Pl. Rep. Br., ECF No. 350, at 24-25).  In essence, Plaintiff contends that it has sufficient pled the fraud at issue by citing generally to the entirety of its ninety-six page TAC.  Regardless of how "pervasive" Defendants' allegedly fraudulent activity might be, Plaintiff must still plead that activity in accordance with Rule 9(b).  Gov't Emples. Ins. Co., 2013 U.S. Dist. LEXIS 171983, *33 (declining to relax the requirements of Rule 9(b) where the alleged fraud was "massive" and complicated in nature).  As even Plaintiff cannot identify specific allegations underlying its contention that Defendants violated 18 U.S.C. § 2314, the Court finds that Plaintiff has failed to plead the fraud at issue with the specificity required under Rule 9(b).  The Court therefore finds that it would be futile to permit Plaintiff to include alleged violations of 18 U.S.C. § 2314 as predicate acts underlying its RICO claims.

### 2.    Non-Fraud-Based Predicate Acts

Plaintiff's proposed pleading also includes allegations that Defendants engaged in two categories of racketeering activity that do not involve fraud and, therefore, do not implicate Rule 9(b).  Specifically, Plaintiff alleges that Defendants violated 18 U.S.C. § 1956 (money laundering) and 18 U.S.C. § 1957 (monetary transactions in criminally derived property)

18 U.S.C. § 1956 has multiple subparts, each of which pertains to different forms of illicit activity.  While Plaintiff does not specify which portion of the statute Defendants allegedly

violated, it appears that only subpart (a)(1) is potentially applicable here  18 U.S.C § 1956(a)(1)

provides:

> (1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>
> > (A)   (i) with the intent to promote the carrying on of specified unlawful activity; or
> >
> > (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
> >
> > (B) knowing that the transaction is designed in whole or in part-
> >
> > > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
> > >
> > > (ii) to avoid a transaction reporting requirement under State or Federal law,
>
> shall be sentenced to a fine of not more than $ 500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

In its Reply submission, Plaintiff contends that it has provided factual allegations regarding

"at least two instances of money laundering," and refers generally to a portion of its TAC

describing certain specific transactions.  (Pl. Rep. Br., ECF No. 350, at 24) (citing TAC ¶¶ 229-

241 and 242-253).  Nothing in the allegations Plaintiff cites, however, provides a factual basis for

Plaintiff's contention that Defendants violated 18 U.S.C. § 1956(a)(1).  While Plaintiff makes a

conclusory allegation that Defendants' conduct constitutes "money laundering", (TAC ¶¶ 239),

Plaintiff does not make factual allegations sufficient to demonstrate that Defendants "knew" that

the property involved in any of the financial transactions at issue was "the proceeds of some form

of unlawful activity" (or what that unlawful- as opposed to civilly actionable – conduct might be), which is the most basic component of a money laundering claim under 18 U.S.C. § 1956(a)(1). Indeed, it appears that the "property" involved in most the transactions at issue was actually the funds that Plaintiff loaned to Defendants.  In short, Plaintiff has not sufficiently alleged that Defendants engaged in "money laundering" in violation of 18 U.S.C. § 1956(a)(1).

Plaintiff's contention that Defendants violated 18 U.S.C. § 1957 is similarly deficient.  That statute provides, in pertinent part:  "Whoever, in any of the circumstances set forth in subsection (d),[4] knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $ 10,000 and is <u>derived from</u> <u>specified unlawful activity</u>, shall be punished as provided in subsection (b)."  (emphasis added).  Plaintiff has simply not alleged that the transactions at issue involved "criminally derived property", let alone property derived from any of the forms of "specified unlawful activity" as that term is defined in the statute. Plaintiff has, therefore, failed to sufficiently allege that Defendants violated 18 U.S.C. § 1957.

### 3.   <u>The Addition of Plaintiff's Proposed RICO Claims Would Be Futile</u>

For the reasons discussed at length above, the Court finds that Plaintiff has failed to sufficiently plead that Defendants violated 18 U.S.C. § 1341, 18 U.S.C. § 1343, § 18 U.S.C. § 2314, 18 U.S.C. § 1956 or 18 U.S.C. § 1957.  Plaintiff, therefore, has failed to plead that Defendants engaged in a "pattern of racketeering activity"; a necessary component of <u>each</u> of Plaintiff's RICO claims.  As Plaintiff's RICO claims would therefore be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court finds that it would be futile to

---

[4] Here, the relevant "circumstance[] set forth in subsection (d)" is that the activity in question took place in the United States.  18 U.S.C. § 1957(d)(1).

permit Plaintiff to add the claims contained in Counts XII through XVI of Plaintiff's proposed TAC.

### c.  **Plaintiff's Proposed "Book Account" Claim**

In Count XVII of its proposed Third Amended Complaint, Plaintiff seeks to add a cause of action based on a "book account" it allegedly maintained in connection with a two million dollar loan that it made "directly to" Defendant Wiltshire Properties, LLC.  (TAC ¶ 455-461).  Plaintiff alleges that it loaned that money to Wiltshire Properties, LLC "for the benefit" of various individual defendants.  (Id. ¶ 457).  Though it appears, from Plaintiff's allegations, that it actually lent that money to Wiltshire as part of a series of transactions, (id. ¶¶ 311, 456), Plaintiff has not provided any information regarding the specific amounts of any such loan.  (Id. ¶¶ 455-461).[5]

Defendants contend that Plaintiff cannot maintain a "book account" cause of action in connection with a monetary loan, (ECF No. 348 at 27; ECF No. 349 at 29), citing the New Jersey Supreme Court's 1852 opinion in Inslee v. Prall.  23 N.J.L. 457.  Defendants, however, cite the non-precedential headnotes for that case, rather than the opinion itself.  (ECF No. 348 at 27; ECF No. 349 at 29).  In Inslee, the New Jersey Supreme Court found that a debtor's notations of loan repayments (made in the debtor's private book of accounts), were not competent evidence that the debtor had made such payments.  Id. at 465.  ("I do not say that these entries were fraudulent; but I do say that a man may very easily pay off his notes and outstanding obligations in this way, if such entries are competent evidence.").  The court also noted, in dicta, "that to permit a man to make his neighbor liable for money paid or lent, by the mere act of writing in his private book of

---

[5] While Plaintiff has earmarked the total portion of the $2 million sum allegedly attributable to each individual defendant, (id. ¶ 457), it has not provided any guidance regarding the logistics of the actual loans to Wiltshire (e.g., whether it made one loan to Wiltshire for each Defendant or whether it made several loans in which the funds were "for the benefit" of multiple defendants).

account that he paid or lent it, is in the last degree unsafe, hazardous and dangerous" and described why books of account are more suitable as evidence for the sale of goods and services. Id. at 464-65. In its Reply submission, Plaintiff simply cites generally to case law describing Book Account claims, while never directly addressing Defendants' primary argument. (Pl.'s Rep Br., ECF No. 350, at 26).

In any case, the Court finds that Plaintiff's Book Account claim fails, as a matter of law, for reasons that do not implicate 162 year old jurisprudence. The parties agree that New Jersey law applies to Plaintiff's Book Account claim. (Compare Def. Opp. Br., ECF No. 348 at 27 and ECF No. 349 at 29-30 with Pl.'s Rep. Br., ECF No. 350, at 26-27). The New Jersey Statute of Frauds, N.J.S.A. § 25:1-5, provides, in pertinent part, that:

> No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:
>
> ***
>
> f. A contract, promise, undertaking or commitment to loan money or to grant, extend or renew credit, in an amount greater than $100,000, not primarily for personal, family or household purposes, made by a person engaged in the business of lending or arranging for the lending of money or extending credit.

The Court finds that the Statute of Frauds operates to bar Plaintiff's Book Account claim here. It is beyond reasonable dispute that Plaintiff was "engaged in the business of lending." Indeed, it appears that "lending" composed the entirety of Plaintiff's business. (See, e.g., TAC ¶ 69) ("The original business model for CIF and LRI was that CIF would raise and loan money to its parent, LRI, for relending in New Jersey."). Moreover, nothing in the TAC suggests that Plaintiff loaned the funds in question to Wiltshire Properties, LLC "primarily for personal, family or household purposes." To the contrary, Plaintiff made the loans in connection with the parties'

ongoing business relationship.  (Id. ¶ 312) ("CIF loaned the sum of $2 Million directly to Defendant Wiltshire . . . to cover initial capital contributions to Wiltshire.").  Finally, Plaintiff alleges that, through one or more transactions, it loaned a total of $2 million to Wiltshire Properties, LLC.  (Id. ¶ 456-57).  Plaintiff does not plead any facts (i.e., the amounts of individual loans, whether each loan was made as part of an individual agreement, etc.) sufficient to permit the Court to find that the loans in question fall outside the scope of the New Jersey Statute of Frauds and are, therefore, legally cognizable.

In short, based on the facts Plaintiff alleges in its proposed TAC, the Court finds that Plaintiff's loan(s) to Wiltshire appear to implicate the restrictions of N.J.S.A. § 25:1-5(f).  That statute explicitly requires that any claim for recovery on such a loan must be made as a cause of action for breach of an express, written contract.  N.J.S.A. § 25:1-5 (requiring both that agreements be in writing and that any action for recovery shall be brought "upon" that writing).[6]  The Court therefore finds that any amendment adding Plaintiff's proposed Book Account claim would be futile.

### d.    Plaintiff's Proposed Claims Against Newly Named Defendant David Lorenzo

In addition to alleging several new causes of action, Plaintiff seeks to amend its pleading to include David Lorenzo as a named defendant.  Specifically, Plaintiff seeks relief against Mr. Lorenzo in connection with all seventeen counts of the TAC.  (TAC ¶¶ 348-461).  Mr. Lorenzo contends that any such amendment would be futile, as the relevant limitations periods have run on all of Plaintiff's proposed claims against him.  (Def. Br., ECF No 348, at 28).  While Mr. Lorenzo acknowledges that Plaintiff utilized "fictitious pleading" by including "John Doe" defendants as

---

[6] Plaintiff itself argues that its Book Account claim is "inseparable" from its separately pled Breach of Contract Claim.  (Pl. Rep. Br., ECF No. 350, at 26).

placeholders in earlier iterations of its pleading, Mr. Lorenzo infers, without <u>any</u> discussion, that

Plaintiff has failed to act with sufficient diligence in identifying and adding him as a party.  (<u>Id.</u>).

"'Fictitious-party practice renders the initial filing against the identified but unnamed

defendant timely in the first instance, subject only to diligent action by the plaintiff to insert

defendant's real name.'"  <u>Ortiz v. City of Camden</u>, No. 11-2300 NLH), 2013 U.S. Dist. LEXIS

60549, *7-8 (D.N.J. Apr. 29, 2013) (quoting <u>Greczyn v. Colgate-Palmolive</u>, 869 A.2d 866, 874

(N.J. 2005)).  "New Jersey Court Rule 4:26-4, which is applicable in federal court, permits a

plaintiff to amend his complaint to identify the proper party as long as a John Doe fictitious

designation was included for that specific category of defendant."  <u>Id.</u> at *9 (internal citations

omitted).  As one Court in this District has noted:

> There are three main elements to the proper application of the
> fictitious party rule.  First, the fictitious name designation must have
> "an appropriate description sufficient to identify" the defendant.
> Second, the plaintiff must have exercised due diligence to ascertain
> the defendant's true name before and after filing the complaint.
> Third, the application of the fictitious party practice rule must not
> prejudice the defendant.

<u>Id.</u> at *10-11 (internal citations omitted).

Neither side has analyzed the application of the fictitious party rule with regard to Mr.

Lorenzo.  In its original Complaint, Plaintiff alleged the existence of "John Doe" defendants who

were "affiliated with the Entity Defendants and/or the Individual Defendants" and who engaged

in the conduct alleged in the pleading.  (Compl., ECF No. 1, ¶ 46)  That definition remained

unchanged in Plaintiff's First and Second Amended Complaints.  (ECF No. 3, ¶ 46; ECF No. 290

¶ 49).  In light of the allegations regarding Mr. Lorenzo set forth in Plaintiff's proposed TAC (i.e.,

that Mr. Lorenzo, in league with other "Individual Defendants" and in connection with the various

"Entity Defendants" was involved in all of the illicit activity that caused Plaintiff's damages), and

considering that Defendants (who bear the burden of establishing that Plaintiff's proposed

amendment would be futile) declined to address the issue, the Court finds that Plaintiff's fictitious party pleading adequately described Mr. Lorenzo.  With regard to Plaintiff's "diligence", the Court notes that this matter was subject to a mandatory stay in connection with Defendant Robert L'Abbate's bankruptcy proceedings between March 18, 2009 and April 23, 2014.  (ECF Nos. 232, 241 and 284).  Indeed, the Court stayed this case less than six months after it was first filed, and before the parties had conducted any discovery.  Plaintiff first sought to add Mr. Lorenzo as a Defendant approximately four months after the Court restored this case to the active calendar. (ECF Nos. 284, 318).  Given the unique circumstances of this case, the Court finds that Plaintiff exercised the due diligence required to utilize the fictitious party with regard to Mr. Lorenzo. Finally, nothing in the record suggests that Mr. Lorenzo would suffer any legitimate prejudice if he were to be added as a defendant at this stage of the litigation (and Mr. Lorenzo has made no effort to identify any such prejudice).  Indeed, despite its age, this case remains in its relative infancy, and has not yet advanced beyond the pleading stage.

Based on the foregoing analysis, the Court finds that Plaintiff may properly utilize the fictitious party rule with regard to Mr. Lorenzo, and that Plaintiff's claims against him would therefore relate back to the date Plaintiff filed its original Complaint: September 22, 2008.  Mr. Lorenzo does not suggest that claims filed against him on that date would run afoul of the relevant limitations periods.  As Mr. Lorenzo has not proffered any other argument as to why he should not be added as a party to this action,[7] the Court finds that Plaintiff's proposed amendment adding Mr. Lorenzo as a named defendant would not be futile.[8]

---

[7] The Court notes that Mr. Lorenzo, like the other defendants, argues that Plaintiff's new, proposed causes of action would be subject to immediate dismissal and that any amendment incorporating those claims would therefore be futile.  (See Def. Br., ECF No. 348, at 19-28).

[8] Any such amendment must, of course, comport with the Court's rulings regarding Plaintiff's proposed RICO and book account claims.

**e.      Defendant's Request to Stay Resolution of this Motion**

Defendants Ender and Caserta, along with Proposed Defendant Lorenzo, argue that this Court should refrain from addressing Plaintiff's Motion for Leave to File a Third Amended Complaint pursuant to the doctrine of res judicata.  (Def. Br., ECF No. 348, at 29).  Specifically, Defendants originally contended that the United States District Court for the District of South Carolina was contemplating a motion to dismiss the RICO claims that Plaintiff Capital Investment Funding, LLC filed against certain of the Defendants in two cases pending in that court.  (Id.). Defendants represented that the motion concerned "identical issues raised between the parties on the instant motion to amend", and requested that this Court therefore wait to ascertain the outcome of the South Carolina matters.  (Id.).  Plaintiff argues that res judicata would not apply, as the issues involved in the various cases are not identical.  (Pl. Rep. Br., ECF No. 28-30).  In any event, Defendants' request for a stay is moot, as the United States District Court for the District of South Carolina has since resolved the motion, having dismissed Plaintiff's claims in those cases in their entirety.  (See Def. February 9, 2015 Letter, ECF No. 353).  Moreover, as this Court has determined that it will deny Plaintiff's Motion with respect to Plaintiff's proposed RICO claims (i.e., the link between this case and the South Carolina action), the res judicata issues Defendants have raised are irrelevant.  The Court therefore denies Defendants' request for a stay.

## III.    <u>CONCLUSION</u>

Based on the foregoing findings, Plaintiff's Motion for Leave to File a Third Amended Complaint is **GRANTED IN PART AND DENIED IN PART**.  Specifically, Plaintiff's requests to add claims under RICO or for a "book account" (Counts XII through XVII of Plaintiff's proposed TAC) are **DENIED WITHOUT PREJUDICE**.  All other aspects of Plaintiff's Motion for Leave to Amend are **GRANTED**.  An appropriate form of Order accompanies this Opinion.


**s/ Joseph A. Dickson**_____
**Joseph A. Dickson**
**United States Magistrate Judge**

Cc:  Hon. Jose L. Linares, U.S.D.J.

25