UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAPITAL INVESTMENT FUNDING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LANCASTER GROUP LLC, et al.<br><br>Defendants. | Civil Action No.: 8-4714 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of three motions made by Defendant Ridgefield Park Complex LLC ("RPOC") [ECF No. 367], Defendants Stuart Katz and Wiltshire Properties ("Katz" and/or "Wiltshire") [ECF No. 368] and Individual Defendants James Caserta, Martin Ender and David Lorenzo ("Individual Defendants") [ECF No. 369] (Collectively "Defendants") seeking to dismiss Plaintiff Capital Investment Funding LLC, (collectively, "Plaintiff")'s Third Amended Complaint ("TAC") [ECF No. 362]. The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court DENIES Defendants' motion.

## I. BACKGROUND

On March 12, 2015, plaintiff Capital Investment Funding, LLC ("CIF") filed a third amended complaint ("TAC") against the following defendants: (1) Lancaster Resources, Inc. ("LRI"); (2) Ridgefield Park Office Complex, LLC ("RPOC") (TAC ¶ 23); (3) Wiltshire

Properties, LLC ("Wiltshire") (TAC ¶ 32); (4) Robert J. L'Abbate ("L'Abbate"); (5) Martin Ender ("Ender") (TAC ¶ 35); (6) Stuart Katz ("Katz") (TAC ¶ 36); (7) James Caserta ("Caserta") (TAC ¶ 37); (8) David Lorenzo ("Lorenzo") (TAC ¶ 38).

Per Plaintiff's TAC, LRI was created around February 1999 and its initial shareholders included individual defendants. (TAC ¶ 65). Soon after, CIF was created as a subsidy of LRI. (TAC ¶ 67). Until November 2002, LRI owner a 91% interest in CIF. (TAC ¶ 70). Around May 1991, LRI executed and delivered a promissory note to CIF, borrowing $3 million. (TAC ¶ 73). The amount increased over the next several years. (TAC ¶ 74). In 2002, the Revolving Credit Loan Agreement, put in place by Ender, increased the loan to $21 million. (TAC ¶ 76). The Revolving Credit Loan Agreement included nineteen limited liability companies and thirteen third-party mortgages owned by LRI as security interests for CIF. (TAC ¶ 82).

Plaintiff asserts that Ender, Katz, Caserta, and Lorenzo fraudulently failed to cause LRI to record CIF's security interests. (TAC ¶ 87). At a meeting on November 24, 2003, LRI shareholders, including defendants, voted unanimously, with one abstention, to transfer all members' stock in CIF to Arthur Field in exchange for all Field's interests in LRI and related companies other than CIF. (TAC ¶ 93).

After a December 2003 amended agreement with CIF, LRI failed to record CIF's security interests. (TAC ¶ 103). Ender, Katz, Caserta, and Lorenzo failed to make principle payments by 2006 maturity date and all parties agreed to an extension through 2010. (TAC ¶ 112). By 2008, defendants failed to make timely payments of interest. (TAC ¶ 114).

In August 2007, Field, as manager to CIF, met with LRI to inspect the collateral. (TAC ¶ 120). Defendants knew or should have known their "proofs" for Field were false, misleading, or otherwise fraudulent because the collateral held was insufficient and not compliant with the

terms of the revolving loan agreements. (TAC ¶ 125). LRI made its last payment of interest in December 2007 when it still owed CIF $18 million. (TAC ¶ ¶133, 135).

After potential embezzlement by Mr. Salzman came to light, defendants, through LRI, created a complicated settlement with Salzman, which created difficulty for defendants to repay CIF (TAC ¶ 149). Defendants failed to make proper disclosure to the authorities and note holders. (TAC ¶ 150). Further action by defendant Katz, such as fraudulently transferring the Fort Lee property represents how all defendants contributed to default of LRI on its indebtedness to CIF (TAC ¶¶ 163,164). Indeed, as early as 2006, defendants knew LRI was highly leveraged. (TAC ¶ 176).

On October 2, 2007, LRI merged with LRI II, LLC. Field purportedly signed the "Release of Collateral" the day prior. (TAC ¶ 196). However, Field has alleged the signature is a forgery. (TAC ¶ 197).

Furthermore, at the time of the merger, an "Agreement to Repay Indebtedness" owed by LRI to CIF was prepared. (TAC ¶ 207). The document was signed by Field, but again, the authenticity is in question. (TAC ¶ 210). Moreover, plaintiff alleges that defendants knew at the time that Lancaster Companies were insolvent and would be unable to meet obligations. (TAC ¶ 212). Defendants also created "sham" intermediate lenders to mask CIF's lending to Lancaster Companies. (TAC ¶ 217). Among these sham entities was one created by Katz, with the consent of Ender, Caserta, and Lorenzo, called Monmouth Financial Group, LLC ("MFG"). (TAC ¶ 218). CIF loaned money to MFG, which then loaned the money to Lancaster Companies who would use the money to make interest payments on its debt to CIF. (TAC ¶ 220).

Plaintiff further alleges that the Revolving Credit Security Agreement between CIF and LRI, was riddled with excessive third party encumbrances to be placed on the collateral because

of reckless disregard by defendants. (TAC ¶ 255). These encumbrances were permitted due to defendants never recording CIF's security interests. (TAC ¶ 256).

Specifically, LRI's assets were largely depleted through RPOC, which was 50% owned by Katz, Caserta, Ender, Lorenzo and L'Abbate through Wiltshire. (TAC ¶ 264). By 2007, Katz was the sole owner of Wiltshire. (TAC ¶ 273). Concurrently, a Separation Agreement was signed in which the interest of RPOC was pledged as collateral for indebtedness of Lancaster Companies to CIF, but this was compromised because it was never recorded. (TAC ¶ 275). In turn, RPOC never satisfied its obligation to LRI, which then could not satisfy its obligation to CIF. (TAC ¶ 283). CIF also made a $2 million loan to defendants, which was not repaid. (TAC ¶ 314).

Plaintiff also alleges that defendants disregarded corporate forms of the various entity defendants. (TAC ¶ 317). Thus, veil-piercing must be employed to help untangle the web of entities and individuals. (TAC ¶ 322). Similarly, plaintiff must be able to access facts within the exclusive possession of defendants to further understand the relationship among defendants. (TAC ¶ 331).

The TAC asserts the following causes of action against named defendants: (1) breach of contract; (2) common law fraud; (3) equitable fraud; (4) fraudulent inducement; (5) intentional misrepresentation; (6) negligent misrepresentation; (7) unjust enrichment; (8) negligently causing economic harm; (9) conversion of funds; (9) breach of fiduciary duty; (10) piercing the corporate veil: and (11) disregard of corporate form of LRI and other entity defendants.

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

### III. DISCUSSION

**A. Motions Before the Court**

 **1. Defendants' Motions**

  **a. Defendant Ridgefield Park Office Complex LLC**

RPOC argues that Plaintiff's Complaint should be dismissed on the following grounds: (1) RPOC and its sole member, Brickhouse, were at all times good faith purchasers for value, and transactions respecting PROC's initial constitution, transfers of its membership interests and purchases of its assets do not demonstrate actual or constructive fraud, rendering remedies under the uniform fraudulent transfer act unavailable to Plaintiff; (2) Plaintiff failed to perfect its alleged security interests and has no enforceable claim in or against RPOC or any of its assets; and (3) should Plaintiff have any cause of action against any other Defendant in this action, its remedies lie solely against the proceeds already paid to Wiltshire and Katz with the October 2013 buyout of their membership interests in RPOC.

### b. Defendant Stuart Katz and Wiltshire Properties, LLC

Katz and Wiltshire argues that Plaintiff's Complaint should be dismissed on the following grounds: (1) Plaintiff's breach of contract claims should be dismissed because Katz and Wiltshire are not liable for the debts of LRI and Plaintiff's claims are mooted by its October 1, 2007 Agreement; (2) Plaintiff's fraud and misrepresentation claims should be dismissed because the misrepresentations are not alleged with requisite specificity, Plaintiff's contention of reasonable reliance is legally untenable, Plaintiff's fraud claims are barred by the economic loss doctrine, Plaintiff's fraud claims are mooted by its October 1, 2007 Agreement, and Plaintiff's Fraud Claims are Mooted by its October 1, 2007 Agreement; (3) Plaintiff's claim for unjust enrichment should be dismissed because Plaintiff has failed to allege that it conferred a direct benefit in Katz or Plaintiff and Plaintiff's claim for the $2 Million is time barred; (4) Plaintiff's negligence claim should be dismissed; (5) Plaintiff's conversion claim should be dismissed; (6) Plaintiff's claim for breach of fiduciary duty should be dismissed; and (7) there are no allegations to support a piercing of the corporate veil.

### c. Defendants Martin Ender, James Caserta and David Lorenzo

The Individual Defendants argue that Plaintiff's Complaint should be dismissed on the following grounds: (1) Plaintiff's third amended complaint fails to state a Claim against the moving defendants because principles of res judicata and collateral estoppel preclude recovery for bankruptcy sums owed by LRI/LRI II under the revolving credit agreement that were discharged in the L'abbate bankruptcy action; (2) Plaintiff fails to state a claim for breach of contract – Count I – against the moving Defendants in its TAC; (3) Plaintiff fails to state a claim against the moving Defendants for negligent misrepresentation – Count VI – in its TAC; (3) Plaintiff fails to state a claim against moving Defendants for unjust enrichment – Count VII – in its TAC, since neither Ender, Caserta nor Lorenzo received a benefit from CIF's loan monies to

LRI; (4) Plaintiff fails to state a claim against the moving Defendants for negligently causing economic harm – Count VIII – since CIF's relationship with moving Defendants, if one exists, is governed by its contract with LRI and the claim is barred by the economic loss doctrine; (5) Plaintiff also fails to state a claim for breach of fiduciary duty – Count X – against the moving Defendants because of CIF's adversarial debtor-creditor relationship with LRI and because the TAC lacks factual allegations of self-dealing; and (6) Plaintiff's fraud-based claims do not withstand the heightened pleading requirements of Fed. R. Civ. P. 9(b) exacting some degree of precision or substantiation of fraud claims sufficient to put moving defendants on notice, and therefore must be dismissed for failure to state a claim.

**B. RPOC Motion to Dismiss (ECF No. 367)**

Defendant RPOC brings its Motion to Dismiss based on a number of assertions. RPOC first asserts that Plaintiff erroneously attributes representations it relied on to RPOC and states that "[o]nly RPOC could pledge its assets and interests to CIF. That never happened here, and there is no record of it." RPOC Brief at 16. RPOC next asserts that Brickhouse paid good value for its 50% interest in RPOC ($4,050,000) and did so relying on affidavits of the individual members of Wiltshire. *Id.* at 17. RPOC contends that because Brickhouse paid good value and relied on affidavits when joining RPOC there can be no showing of fraudulent intent on its part and therefore the fraud claims against it must be dismissed. *Id.* at 20. RPOC also raises a statute of limitations argument for the fraud claims against it under the Uniform Fraud Transfer Act (UFTA). *Id.* RPOC next asserts that Plaintiff failed to perfect its security interests and therefore has no enforceable claim against RPOC or its assets. *Id.* at 21. RPOC states that "Plaintiff has failed to file or record a single financing document that constitutes actual or constructive notification of Plaintiff's alleged interests in RPOC or its assets," and thus does not have an

enforceable claim on any membership interest in RPOC. *Id.* at 22-24. Finally, RPOC asserts that even if Plaintiff proceeds with its claims against the other defendants in this action, any remedy it is awarded lies against the proceeds RPOC previously paid to Wiltshire and Katz in the October 2013 buyout of their membership interests. *Id.* at 24. Essentially, RPOC contends that no named defendant in this case has any current or continuing interest in RPOC, and therefore any judgment should not direct any costs to be awarded from RPOC. *Id.*

Plaintiff's Brief opposing RPOC's Motion for Dismissal ably responds to each of RPOC's contentions. First and foremost, Plaintiff asserts that RPOC's motion to dismiss is procedurally deficient because "the foundation of RPOC's arguments relies upon matters outside of the pleadings and should not be considered by this Court." Plaintiff's Brief at 1. Plaintiff acknowledges that the Court may take judicial notice of public documents, but notes that "such notice is limited to the fact of the document's existence, not its accuracy," citing to *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) for this proposition. *Id.* at 2. Plaintiff contends that RPOC's exhibits A-I to its motion are outside of the pleadings, and therefore, according to Fed. R. Civ. P. 12(d), "the motion must be treated as one of for summary judgment under Rule 56." *Id.* at 1. Plaintiff states that if the motion is to be considered as a motion for summary judgment, it must be denied because of "abundant disputes of material fact," such as questions of agency on the part of Defendants and whether RPOC had notice or knowledge of fraud. *Id.* at 4. Plaintiff also notes that RPOC incorrectly relies on the statute of limitations for the UFTA as the TAC does not allege fraud under that statute, and Plaintiff further asserts that this suit was filed in a timely manner within the six year statute of limitations set forth under N.J.S.A. 2A:14-1. *Id.* at 6. Lastly, Plaintiff disputes RPOC's claim that it never filed documents

to record its interest in RPOC, pointing to an April 11, 2008 UCC Financing Statement filed with the Bergen County Clerk. *Id.* at 7-8.

The Court notes that RPOC's Brief in support of its Motion to Dismiss contains a number of compelling arguments which may or may not be dispositive of this action if proven with facts. That being said, the Court agrees with Plaintiff's opposition, which emphasizes that, whatever the merits of RPOC's arguments, it is not procedurally proper to raise them at this stage of the litigation. As noted above, all a complaint must do to survive a motion to dismiss is "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. RPOC's arguments are disputed by Plaintiff's TAC and opposition filing, and do not truly challenge whether Plaintiff's claims are cognizable, but rather dispute the evidence supporting Plaintiff's claims. In order to ensure truth-seeking and an objective, fair, resolution of litigation, Courts do not decide disputes requiring determinations of material facts until after discovery has taken place so that all necessary information can be presented. RPOC may ultimately prevail with the arguments it has set forth, this opinion certainly does not question the merits of those claims, but now is not the appropriate stage of the litigation for the Court to decide them. For these reasons, RPOC's motion to dismiss the TAC is denied.

**C. Katz and Wilshire Motion to Dismiss (ECF No. 367)**

Defendants Katz and Wilshire's Motion to Dismiss also makes seemingly sound arguments which are, for the most part, procedurally improper at this point. Katz and Wilshire present seven broad arguments as to why Plaintiff's TAC should be dismissed: (1) CIF's breach of contract claim should be dismissed because Katz and Wilshire are not liable for LRI's debts and CIF's claims are mooted by its Oct. 1, 2007 agreement (Katz and Wilshire Brief at 2-9); (2) CIF's fraud and misrepresentation claims should be dismissed because they are not alleged with

adequate specificity, are legally untenable, are barred by the Economic Loss Doctrine, are mooted by the Oct. 1, 2007 agreement, and Plaintiff does not have standing for these claims (*Id.* at 10-23); (3) CIF's claim for unjust enrichment should be dismissed because CIF has failed to allege a direct benefit conferred to Katz and Wilshire and CIF's $2 million claim is barred by the applicable statute of limitations (*Id.* at 24-27); (4) CIF's negligence claim should be dismissed because the only duty between the parties arises out of a contractual relationship, making tort claims inapplicable (*Id.* at 28-29); (5) CIF's conversion claim should be dismissed because the complaint fails to allege Katz or Wilshire converted the property of CIF and conversion does not apply to a debtor-creditor relationship (*Id.* at 29-30); (6) CIF's claim for breach of fiduciary duty is mooted by the Oct. 1, 2007 agreement (*Id.* at 31); (7) CIF's claim to pierce the corporate veil should be dismissed because it is not supported by any pled underlying facts, are not asserted with adequate specificity, are implausible, and are barred by the Economic Loss Doctrine. *Id.* at 31-32.

With respect to Katz and Wilshire's defenses above-labeled (1), (3), (4), (5), (6), and (7), the Court applies the same reasoning it did to RPOC's motion. These arguments do not truly question whether Plaintiff has sufficiently pled his claims but rather argue the merits of those claims. The arguments may be sound but they are fraught with disputes over material facts and cannot be decided at this juncture of the litigation. Katz and Wilshire's argument (2) seeking to dismiss Plaintiff's fraud and misrepresentation claims is procedurally proper here. They assert the well-known Fed. R. Civ. P. 9(b) which requires claims of fraud to be pled with "particularity," usually requiring at the minimum a statement of the who, what, when, where, why, and how of the fraud allegation. *Id.* at 11. While it is undisputed that fraud claims must be pled with heightened specificity, Rule 9(b) is not meant to bar valid claims where complexity or

obfuscation by defendants makes compliance particularly difficult. Plaintiff notes that the Third Circuit has repeatedly affirmed that Rule 9(b) has some flexibility, holding that "Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud," *U.S. v. Kensington Hospital*, 760 F. Supp 1120, 1125 (E.D. Pa. 1991), and recognizing that the particularity requirement of the rule is "relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." *In re Mobile Media Securities Litigation*, 28 F. Supp 2d 901, 936-36 (D.N.J. 1998). Both parties also note that a previous decision of this court found the fraud allegations lacking under Rule 9(b), but the Complaint has been amended for a third time and specifically includes greater detail to address this failing. This case has idled for years now, it is time to proceed into factual inquiry concerning what really occurred in this business endeavor gone wrong. For these reasons, Katz and Wiltshire's Motion to Dismiss is denied.

**D. Individual Defendants' Motion to Dismiss (ECF No. 369)**

The Individual Defendants argue that Plaintiff's third amended complaint fails to state a claim against the Individual Defendants because principles of res judicata and collateral estoppel preclude recovery for bankruptcy sums owed by LRI/LRI II under the revolving credit agreement that were discharged in the L'Abbate bankruptcy action. The Individual Defendants state that Plaintiff's attempts to pierce the corporate veil and hold the Individual Defendants personally liable for LRI's debts should be rebuffed by this Court because these issues were already passed on by the Bankruptcy Court in arriving at its final decree to discharge L'Abbate and LRI of the CIF $21,000,000 debt. The Individual Defendants contend that Plaintiff should not be allowed to relitigate what was already litigated in the L'Abbate Bankruptcy Action, wherein Plaintiff interposed the same fraud claims relating to under-secured contractual loan

obligations that it brings here in its Complaint. However, the Individual Defendants argue, even if principles of res judicata and collateral estoppel are not given preclusive effect here, Plaintiff's TAC still fails to state claim on the substance of its allegations, and again the TAC should be dismissed as against the Individual Defendants.

Plaintiff refutes the Individual Defendants' arguments by stating that Plaintiff has sufficiently alleged that the Lancaster entities were used by the Individual Defendants with a specific design to deceive Plaintiff, hide, deplete or over encumber collateral, and covert funds borrow from Plaintiff to their own benefit. Plaintiff points specifically to the allegations within ¶¶ 173-214 in the TAC, in which Plaintiff alleges that the Individual Defendants acknowledged LRI's default to Plaintiff on over $18 million of debt and then engaged in a mass reorganization ultimately rendering all "collateral" unrecoverable. Plaintiff argues that the Individual Defendants should not be able to hide behind these allegedly "fraudulent" corporate facades.

In following the same logic as above, the Court finds it inappropriate, at this stage of the litigation, to dismiss Plaintiff's claims against the Individual Defendants. While the Court finds that Plaintiff has adequately pled facts sufficient to defeat the Individual Defendant's motion to dismiss Plaintiff's claim for piercing the corporate veil (*See* TAC ¶¶ 173-214), the Court also finds that res judicata and collateral estoppel do not apply in this instance. Although, the U.S. Bankruptcy Court's decree discharged Defendant L'Abbate, the Individual Defendants have not demonstrated to this Court that the L'Abbate bankruptcy action resulted in: "(1) a final judgment by a court of a competent jurisdiction; (2) identity of issues; (3) identity of parties; and (4) identity of the cause of action," as it pertains to Plaintiff's fraud claims against the Individual Defendants. Therefore, because Plaintiff has alleged facts sufficient to defeat the Individual

Defendants' motion to dismiss and the Court finds that the principles of Collateral Estoppel and Res Judicata do not apply, the Court denies the Individual Defendants' motion to dismiss.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' Motions to dismiss Plaintiff's Third Amended Complaint. [ECF No. 367, 368, 369]. An appropriate Order accompanies this Opinion.

Date: August 18, 2015 /s/ Jose L. Linares
Jose L. Linares
United States District Judge